[No. C071857. Third Dist. Mar. 7, 2014.]

THE PEOPLE, Plaintiff and Respondent, v.
JUSTIN STEELE, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II, III, and IV of the Discussion.

## COUNSEL

Mark David Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Kevin L. Quade, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ROBIE, J.**—A jury found defendant Justin Steele guilty of pandering E.L. to become a prostitute; procuring E.L. to leave California for prostitution; pimping of E.L. and D.R.; human trafficking of E.L. and D.R.; making criminal threats against E.L.; forcible oral copulation of E.L.; kidnapping

of D.R.; abducting D.R. for prostitution; assault of D.R. by force likely to produce great bodily injury; and pandering D.R., age 17, to become a prostitute. The jury found that defendant personally used a deadly weapon—hot cooking grease or oil—in the commission of the criminal threats count. The trial court found true two strike allegations. Defendant was sentenced to prison for 176 years to life.

On appeal, defendant contends (1) the evidence of abducting D.R. for prostitution was insufficient; (2) instructing the jury with CALCRIM No. 1190, a rule of substantive law, immediately following CALCRIM No. 301, an instruction on witness credibility, erroneously suggested "that the law requires a special deference to the complaining witness's credibility"; (3) Penal Code[1] section 654 bars separate punishment for kidnapping D.R. and human trafficking of D.R.; (4) the trial court's refusal to permit discovery of D.R.'s medical records violated his confrontation and due process rights; and (5) due process requires limited disclosure of the medical records to the parties for the purpose of briefing under seal of the discovery issue. We affirm.

## DISCUSSION

## I

### Sufficiency of Evidence of Kidnapping for Prostitution

Defendant contends the record contains insufficient evidence to support his conviction of kidnapping D.R. for prostitution. Specifically, he claims there was no evidence that D.R. was in the legal custody of a parent or guardian during the time of her abduction. We disagree.

Viewed in the light most favorable to the judgment (*People v. Boyer* (2006) 38 Cal.4th 412, 479–480 [42 Cal.Rptr.3d 677, 133 P.3d 581]), the evidence shows the following. On several occasions during the summer and fall of 2010, 17-year-old D.R. left home without stating where she was going. She testified: "Technically I didn't run away. [¶] . . . [¶] I don't run away. There is no point. I go back home."

In September 2010, 18-year-old E.L. was kicked out of her home and went to live with D.R. and her family. E.L. remained for only a short time because D.R. experienced difficulties with her own mother and was asked to leave the residence. But D.R. remained in contact with her mother and visited her in the days that preceded the charges of kidnapping, human trafficking, and abducting.

---

[1] Undesignated statutory references are to the Penal Code.

E.L. and D.R. were regular visitors to the apartment of April Hart. Around this time, both girls were introduced to defendant, the boyfriend of Hart. Hart worked as a prostitute and gave her prostitution earnings to defendant.

Around November 2010, Hart lent her electronic benefits transfer government assistance card to D.R., who used the card to make purchases without Hart's permission. Defendant learned of D.R.'s purchases and informed Hart. Defendant, Hart, E.L. and 15-year-old I.C. got into a car and went to confront D.R. The group found D.R. at her boyfriend's residence. E.L. was ordered to call D.R. over to the car. Immediately upon entering the middle backseat, D.R. was questioned about the card. When D.R. screamed for help, defendant told her to "shut up" and threatened to kill her. Defendant gave D.R.'s backpack to E.L. and told her to search it for evidence of theft. E.L. found receipts from card purchases.

The group eventually ended up back at Hart's apartment. When they arrived several people were waiting outside. At Hart's request a female neighbor beat up D.R. while the others cheered. During the fight, defendant studied the receipts recovered from D.R.'s backpack. Defendant told E.L. that the beating was punishment for D.R.'s theft. At some point, defendant joined the fight. He choked and kicked D.R., lifted her into the air, threw her to the ground, and dragged her by the hair into the apartment.

The group forced D.R. to don a dress and high heels and to pose for photographs that were then posted to a prostitution Web site. A few minutes later, a client responded to the post. The group returned to the car where Hart and I.C. told D.R. that she had to earn back the money she had stolen. Hart drove to a motel in the vicinity of Watt Avenue where D.R. was taken to a room and left with a man she did not know. The man attempted to put his penis in D.R.'s mouth but she bit it. When Hart learned this she beat up D.R. and then drove the group to a nearby residence. I.C. and D.R. were left at the residence while defendant, Hart, and E.L. continued to a downtown motel. At the residence, D.R. sent a text message to her boyfriend, who contacted D.R.'s mother. The next morning, when I.C. and D.R. returned to Hart's apartment, D.R.'s mother was waiting for her and took her home.

"On appeal, the test of legal sufficiency is whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond a reasonable doubt. [Citations.] Evidence meeting this standard satisfies constitutional due process and reliability concerns. [Citations.] [¶] While the appellate court must determine that the supporting evidence is reasonable, inherently credible, and of solid value, the court must review the evidence in the light most favorable to the [judgment], and must presume every fact the jury could reasonably

have deduced from the evidence. [Citations.] Issues of witness credibility are for the jury. [Citations.]" (*People v. Boyer, supra*, 38 Cal.4th at pp. 479–480.)

Section 267 provides: "Every person who takes away any other person under the age of 18 years from the father, mother, guardian, or other person having the legal charge of the other person, without their consent, for the purpose of prostitution, is punishable by imprisonment in the state prison, and a fine not exceeding two thousand dollars ($2,000)."

Defendant contends the "taking of a minor, who comes and goes as she pleases, from the company of her boyfriend," does not qualify as a crime under section 267. We disagree.

■  " 'The gist of the offense is the taking away of the child against the will of the person having lawful charge of her, for the purpose of prostitution . . . .['] [Citation.]" (*People v. Dolan* (1892) 96 Cal. 315, 318 [31 P. 107].) "[W]hether [the minor] . . . wandered abroad at night [does] not affect . . . the question as to whether or not she was taken off while under the age of eighteen years, for purposes of prostitution, without the consent of her parents." (*Ibid.*) Thus, the facts that D.R. "wandered abroad" to the company of her boyfriend and "comes and goes as she pleases" do not affect the question of whether she was taken while under age 18, for purposes of prostitution, without her parent's consent. (*Ibid.*) Defendant's argument, which confuses parental consent to the child wandering abroad with *consent to her being taken for prostitution*, has no merit.

Defendant relies on *People v. Flores* (1911) 160 Cal. 766 [118 P. 246], which reversed a defendant's section 267 conviction because there was insufficient evidence that the minor was under the lawful charge of her mother. The court explained: " '[W]here a female who has lost her virtue, under the age of eighteen, and *who has been abandoned, or who is not in the legal charge of any one*, but a wanderer upon the town, is aided in being placed in a house of prostitution, no crime has been committed. No one would say from the evidence in this record that the defendant took the girl from her mother. The words mean the removal or separation of the girl from the parent or legal guardian. If the girl was not with her mother or under the immediate control and custody of the mother, but living separate and apart from her, going from place to place of her own volition, not making her home with her mother, she was not "taken from the mother." ' " (160 Cal. at p. 770, italics added.)

■  In the present case, the jury had no duty to conclude that D.R.'s mother abandoned D.R. or relinquished her legal charge of D.R. Although the mother asked D.R. to leave the house in mid-October 2010, she filed a

missing persons report with law enforcement on November 2, 2010, shortly before the present offenses. Moreover, the mother responded to D.R.'s text message by waiting for D.R. outside of Hart's apartment and by taking D.R. home. For her part, D.R. testified that she "technically" does not run away and always returns home. She remained in contact with her mother and had visited her mother in the days prior to the taking. These facts show that D.R. remained in her mother's legal custody *and* that, contrary to defendant's argument, they enjoyed a substantive parent-child relationship in which the mother endeavored to protect D.R.'s safety and character. Nothing in section 267 suggests that its protection is unavailable whenever family dynamics end up with a temporary separation of parent and child. Substantial evidence supports this charge. (*People v. Boyer, supra*, 38 Cal.4th at pp. 479–480.)

II–IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Hull, Acting P. J., and Hoch, J., concurred.

A petition for a rehearing was denied April 2, 2014, and appellant's petition for review by the Supreme Court was denied June 11, 2014, S217701.

---

*See footnote, *ante*, page 300.